# EXHIBIT A

## LOAN AGREEMENT

This Loan Agreement (the "Agreement") is entered into as of the 16th day of February, 1999, between Massachusetts Asset Financing Corp., a Massachusetts corporation (the "Lender"), and Alicia Clark Bradley of Fairfield, California (the "Borrower").

### W I T N E S S E T H

WHEREAS, Borrower has requested that Lender lend her $130,000.00; and

WHEREAS, Lender is willing to make such loan and provide such financial accommodations on the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual conditions and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.0   DEFINITIONS.  All terms used herein which are defined in Article 1 or Article 9 of the Uniform Commercial Code shall have the meanings given therein unless otherwise defined in this Agreement.  For purposes of this Agreement, the following terms shall have the respective meanings given to them below:

1.1   "Cash Collateral Account" shall have the meaning set forth in Section 5.1 hereof.

1.2   "Collateral" shall mean the Cash Collateral Account and the Extreme Jackpot Payments.

1.3   "Event of Default" shall mean the occurrence or existence of any event or condition described in Section 9.1 hereof.

1.4   "Extreme Jackpot Payments" shall mean those annual payments of Fifty Five Thousand Two Hundred Forty-Five and 85/100 Dollars ($55,245.85) due to Borrower or to be paid to Borrower by Casino Data Systems ("CDS") acknowledged in the letter attached hereto as Exhibit A (the "CDS Letter").

1.5   "Loan Documents" shall mean, collectively, this Agreement, the Note, and all other agreements, documents and instruments now or at any time hereafter executed and/or delivered by Borrower in connection with this Agreement, as the same now exist or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

1.6   "Note" shall have the meaning set forth in Section 2 hereof.

**2.0    LOAN.** Subject to and upon the terms and conditions contained herein, Lender agrees to loan Borrower the amount of $130,000.00 upon Borrower's execution and delivery to Massachusetts Asset Financing Corp. of a promissory note in the form and substance as set forth as <u>Exhibit B</u> attached hereto (the "Note"), which Note shall be for the amount of Two Hundred Thirty Two Thousand and Fifty Dollars ($232,050.00) (which amount reflects principal, finance charges and agent's fees).

**3.0    GRANT OF SECURITY INTEREST.** As security for its indebtedness and other obligations to Lender hereunder, Borrower hereby pledges and grants Lender a security interest in and to the Extreme Jackpot Payments.

**4.0    CONDITIONS PRECEDENT.** The obligation of Lender to extend the credit contemplated by this Agreement is subject to the fulfillment to Lender's satisfaction in its sole determination of all of the following conditions:

(a)    <u>Approval of Lender Counsel.</u> All legal matters incidental to the extension of credit by Lender shall be satisfactory to Lender's counsel.

(b)    <u>Documentation.</u> Lender shall have received, unless waived by Lender, in form and substance satisfactory to Lender, each of the following, duly executed:

    (i)     This Agreement;
    (ii)    The Note;
    (iii)   The Power(s) of Attorney in the form and substance as set forth in <u>Exhibit C</u> attached hereto;
    (iv)    UCC-1 Financing Statement(s);
    (v)     A Letter of Notification to CDS in the form and substance as set forth in <u>Exhibit D</u> attached hereto (the "Notification Letter");
    (vi)    Signature Cards and Account Authorizations required to establish the Cash Collateral Account at Cape Cod Bank and Trust Company in South Yarmouth, Massachusetts, in the name of Lender and Borrower, as required; and
    (vii)   Such other documents as Lender may require under any other section of this Agreement.

(c)    <u>Security Interests.</u> Lender shall have received evidence, in form and substance satisfactory to Lender, that Lender has a first priority security interest in and lien upon, the Collateral; and

(d)    <u>Other Documents.</u> Lender shall have received, in form and substance satisfactory to Lender, all consents, waivers, acknowledgments, and other agreements from third persons which Lender may deem necessary or desirable in order to permit, protect and perfect its security interests in and liens upon the Collateral or to effectuate the provisions or purposes of this Agreement and the other Loan Documents.

(e)    <u>CDS Approval.</u> Lender is under no obligation to extend the credit contemplated by this Agreement until such time as it receives confirmation, in form and

118224(1)-JSALON
UA-UA

000010

substance satisfactory to Lender, from CDS that the Extreme Jackpot Payments will be forwarded to the address requested by Borrower in the Notification Letter.

## 5.0 COLLECTION AND ADMINISTRATION.

### 5.1 Cash Collateral Account.

(a) **Cash Collateral Account.** Borrower shall, at Borrower's expense and in the manner requested by Lender from time to time, direct that all Extreme Jackpot Payments be deposited into a non-interest-bearing account maintained in Borrower's and Lender's names. Borrower hereby grants to Lender a security interest in such account over which Borrower shall have no control nor rights of withdrawal ("Cash Collateral Account").

(b) **Application of Payments to Amounts Due.** Extreme Jackpot Payments or other funds received will be applied to the Loan two (2) business days following the date of receipt by Lender of the advice of deposit that such payments or other funds have been deposited in the Cash Collateral Account. If and to the extent that any sums are received in the Cash Collateral Account in excess of the amounts due or to be due under the Note or the Loan Documents within ten (10) days thereafter, then Lender shall return such excess to Borrower. For example, if a deposit is made on September 13, 1999 in the amount of Fifty Five Thousand Two Hundred Forty-Five and 85/100 Dollars ($55,245.85) and the amount to be due under the Note between September 13 and September 23, 1999 is Thirty-Three Thousand One Hundred Fifty Dollars ($33,150.00), then Lender shall have the obligation to return Twenty-Two Thousand Ninety-Five and 85/100 Dollars ($22,095.85) directly to Borrower.

(c) **Immediate Deposit.** Borrower and all of her affiliates or agents shall, acting as trustee for Lender, receive, as the property of Lender, any monies, checks, notes, drafts, or any other payment relating to and/or proceeds of the Extreme Jackpot Payments which come into their possession or under their control and immediately upon receipt thereof, shall deposit or cause the same to be deposited in the Cash Collateral Account, or remit the same or cause the same to be remitted, in kind, to Lender. In no event shall the same be commingled with Borrower's own funds.

### 5.2. Payments.

(a) All amounts due under or received for application against amounts due under any of the Loan Documents shall be payable to the Cash Collateral Account, or such other place as Lender may designate from time to time. Lender may apply payments received or collected from Borrower or for the account of Borrower or in the Cash Collateral Account (including without limitation, the monetary proceeds of collections or of realization upon any Collateral) to the amounts then due under the Note or other Loan Documents, in such order and manner as Lender determines. At Lender's option, all principal, finance charges, fees, costs, expenses and other charges provided for in this Agreement or the other

Loan Documents may be charged directly to the Cash Collateral Account.

(b)    If after receipt of any payment of, or proceeds of Collateral applied to the payment of, any of Borrower's obligations to Lender under this Agreement, Lender is required to surrender or return such payment or proceeds to any person or entity for any reason, then the obligations intended to be satisfied by such payment or proceeds shall be reinstated and continue, and this Agreement shall continue in full force and effect as if such payment or proceeds had not been received by Lender.  Borrower shall be liable to pay to Lender, and does hereby indemnify and hold Lender harmless for the amount of any payments or proceeds surrendered or returned.

(c)    This Section 5.2 shall remain effective notwithstanding any contrary action which may be taken by Lender in reliance upon such payment or proceeds.  This Section 5.2 shall survive the payment of Borrower's obligations under the Loan Documents and the termination of this Agreement.

**5.3    Additional Rights of Lender**.  Lender may, at its option, pay, purchase, contest, compromise or discharge any accounts, disputes, attachments, levies, taxes, claims, debts, liens, charges, security interests or encumbrances which in its judgment may affect or appear to affect the Collateral or its rights hereunder; in addition, Lender may pay for the maintenance and preservation of the Collateral.  The amounts of any payments made hereunder, together with all costs and expenses, including all attorneys' fees, are all to be repaid by Borrower to Lender.  Lender  may do anything, in its discretion, which it deems necessary for perfecting its security interest in any Collateral.

**6.    REPRESENTATIONS AND WARRANTIES**.  Borrower makes the following representations and warranties to Lender, which representations and warranties shall survive the execution of this Agreement and shall continue in full force and effect until the full and final payment, and satisfaction and discharge, of all obligations of Borrower to Lender subject to this Agreement.

(a)    **Authorization and Validity**.  The Loan Documents have been duly authorized, and upon their execution and delivery in accordance with the provisions hereof will constitute legal, valid and binding agreements and obligations of Borrower or the party which executes the same, enforceable in accordance with their respective terms.

(b)    **No Violation**. The execution, delivery and performance by Borrower of each of the Loan Documents do not violate any provision of any law or regulation, or result in a breach of or default under any contract, obligation, indenture or other instrument to which Borrower is a party or by which Borrower may be bound.

(c)    **Payments Remaining Due**.  An Extreme Jackpot Payment of Fifty Five Thousand Two Hundred Forty-Five and 85/100 Dollars ($55,245.85) was made on September 16, 1998 in accordance with the CDS Letter. Payments of Fifty Five Thousand Two Hundred Forty-Five and 85/100 Dollars ($55,245.85) for each of the years 1999 to 2017 remain unpaid and owing to Borrower, and Borrower has not received any notice, nor has any knowledge of any reason, that any

payments described in the CDS Letter as being payable to her on dates after this date will not be fully and timely paid. All such payments are genuine, bona fide, existing obligations unconditionally owed to Borrower, free of liens and encumbrances and without defense or offset.

(d)    **Address.** Borrower's sole address is, and all of the books, files, and records pertaining to the Collateral shall be kept only at, the address set forth in Section 11.2 of this Agreement; Borrower shall not relocate or change her sole address or any business office from the address indicated without thirty (30) days prior written notice to Lender; and

(e)    **Ownership.** Borrower is, and will continue to be, the sole and complete owner of the Collateral free from any liens, security interests or encumbrances of any nature or kind whatsoever unless otherwise agreed to in writing by Lender, and Borrower, at her expense, will defend the Collateral against the claims and demands of all persons and entities. Borrower has not named, specified or directed CDS to pay, and will not name, specify or direct CDS to pay, any of the Collateral to any party or beneficiary other than her estate in the event of her death or disability.

7.    **AFFIRMATIVE COVENANTS.** Borrower covenants that so long as any liabilities (whether direct or contingent, liquidated or unliquidated) of Borrower to Lender under any of the Loan Documents remain outstanding, and until payment in full of all obligations of Borrower subject hereto, Borrower shall:

(a)    **Punctual Payments.** Punctually pay all principal, interest, fees or other liabilities due under any of the Loan Documents at the times and place and in the manner specified therein.

(b)    **Taxes and Other Liabilities.** Pay and discharge when due any and all indebtedness, obligations, assessments and taxes, including without limitation, federal and state income taxes.

(c)    **Notice to Lender.** Promptly, but in no event more than five (5) days after the occurrence of each such event or matter, give written notice to Lender in reasonable detail of the occurrence of any Event of Default, or any condition, event or act which with the giving of notice or the passage of time or both would constitute such an Event of Default.

(d)    **Further Assurances.** At the request of Lender, at any time and from time to time, duly execute and deliver, or cause to be duly executed and delivered, such further agreements, documents and instruments, and do or cause to be done such further acts as may be necessary or proper to evidence, perfect, maintain and enforce the security interests and the priority thereof in the Collateral and to otherwise effectuate the provisions or purposes of this Agreement or any of the other Loan Documents, at Borrower's expense. Where permitted by law, Borrower hereby authorizes Lender to execute and file one or more Uniform Commercial Code financing statements signed only by Lender.

118224(1)/JSALON
UA-JA

000013

8.    **NEGATIVE COVENANTS**.  Borrower further covenants that so long as Lender remains committed to Borrower pursuant to the terms of this Agreement or any liabilities (whether direct or contingent, liquidated or unliquidated) of Borrower to Lender under any of the Loan Documents remaining outstanding, and until payment in full of all obligations of Borrower subject hereto, Borrower will not without Lender's prior written consent:

(a)    Mortgage, pledge, grant or permit to exist a security interest in, or lien upon, any of the Collateral.

(b)    Transfer, sell, assign, conceal or in any manner dispose of the Collateral or permit the Collateral to be attached, seized, levied upon or confiscated, or permit the Collateral to be used in violation of any law or ordinance; or

(c)    Directly or indirectly communicate, in any way, with CDS or any successor thereto, which has the effect of altering or delaying the delivery of the Extreme Jackpot Payments from the manner and time described in the first sentence of the Notification Letter, or naming or specifying that the Extreme Jackpot Payments are to be made to any party other than Lender's estate in the event of her death or disability.

9.0    **EVENTS OF DEFAULT**.

9.1    **Events of Default**.  The occurrence of any of the following shall constitute an "Event of Default" under this Agreement:

(a)    Borrower shall fail to pay when due any amounts payable under any of the Loan Documents;

(b)    Any default in the payment or performance of any obligation, or any defined Event of Default, under this Agreement or any of the other Loan Documents;

(c)    CDS shall fail to send any Extreme Jackpot Payment at the scheduled dates and otherwise in accordance with the terms of Borrower's Notification Letter;

(d)    There shall exist or occur any event or condition which Lender, in good faith, believes impairs, or is substantially likely to impair, the prospect of payment or performance by Borrower of its obligations under any of the Loan Documents;

(e)    The death or incapacity of Borrower; or

(f)    The sale, transfer, hypothecation, assignment or encumbrance, whether voluntary, involuntary or by operation of law of the Collateral, or the attempt by Borrower to accomplish any such sale, transfer, hypothecation, assignment or encumbrance.

9.2    **Remedies**.  If an Event of Default shall occur, (a) any indebtedness of Borrower under any of the Loan Documents, any term thereof to the contrary notwithstanding, shall at Lender's option and without notice become immediately due and payable without

118224(1)-JSALON
UA-UA

000014

presentment, demand, protest or notice of dishonor, all of which are hereby expressly waived by Borrower; and (b) Lender shall have all rights, powers and remedies available under each of the Loan Documents, or accorded by law, including without limitation the right to resort to any or all security for any credit accommodation from Lender subject hereto and to exercise any or all of the rights of a beneficiary or secured party pursuant to applicable law. All rights, powers and remedies of Lender in connection with each of the Loan Documents may be exercised at any time by Lender and from time to time after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

## 10.0   TERMINATION.

(a)   **Maturity Date.** Upon the maturity of the Note, Borrower shall pay to Lender, in full, all outstanding and unpaid obligations under this Agreement and the other Loan Documents and shall furnish Cash Collateral to Lender in such amounts as Lender determines are reasonably necessary to secure Lender from loss, cost, damage or expense, including attorneys' fees and legal expenses, in connection with any contingent obligations, including checks or other payments provisionally credited to the obligations and/or as to which Lender has not yet received final and indefeasible payment. Interest shall be due until and including the next business day, if the amounts so paid by Borrower to the bank account designated by Lender are received in such bank account later than 12:00 noon, New York time.

(b)   **Continuing Obligations.** No termination of this Agreement or the other Loan Documents shall relieve or discharge Borrower of its respective duties, obligations and covenants under this Agreement or the other Loan Documents until all Borrower's obligations under this Agreement and the other Loan Documents have been fully and finally discharged and paid, and Lender's continuing security interest in the Collateral and the rights and remedies of Lender hereunder, under the other Loan Documents and applicable law, shall remain in effect until all such obligations have been fully and finally discharged and paid.

## 11.0   MISCELLANEOUS.

11.1   **No Waiver.** No delay, failure or discontinuance of Lender in exercising any right, power or remedy under any of the Loan Documents shall affect or operate as a waiver of such right, power or remedy; nor shall any single or partial exercise of any such right, power or remedy preclude, waive or otherwise affect any other or further exercise thereof or the exercise of any other right, power or remedy. Any waiver, permit, consent or approval of any kind by Lender of any breach of or default under any of the Loan Documents must be in writing and shall be effective only to the extent set forth in such writing.

11.2   **Notices.** All notices, requests and demands which any party is required or may desire to give to any other party under any provision of this Agreement must be in writing delivered to each party at the following address:

       BORROWER: Alicia Clark Bradley

000015

1597 Northwood Drive
Fairfield, CA   94533

With a Copy to:     Howard S. Fisher, Esquire
                    Greenbaum, Nagel, Fisher & Hammelburg
                    185 Devonshire Street
                    Boston, MA   02110

LENDER:             Massachusetts Asset Financing Corp.
                    575 Mistic Drive
                    Marstons Mills, Massachusetts 02648
                    Attention: Joel Nadel

With a Copy to:     Jonathan D. Salon, Esq.
                    Lane Altman & Owens LLP
                    101 Federal Street
                    Boston, MA 02110

or to such other address as any party may designate by written notice to all other parties. Each such notice, request and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. mail, first class and postage prepaid; and (c) if sent by telecopy, upon receipt.

**11.3   Costs, Expenses and Attorneys' Fees.**  Borrower shall pay to Lender immediately upon demand the full amount of all payments, advances, charges, costs and expenses, including reasonable attorneys' fees, incurred by Lender in connection with the enforcement of Lender's rights and/or the collection of any amounts which become due to Lender under any of the Loan Documents, and the prosecution or defense of any action in any way related to any of the Loan Documents, including without limitation any action for declaratory relief, and including any of the foregoing incurred in connection with any bankruptcy proceeding relating to Borrower.

**11.4   Consultations with Counsel.**  Borrower hereby acknowledges that she UNDERSTANDS THAT THIS INSTRUMENT CREATES BINDING OBLIGATIONS WITH RESPECT TO WHICH THE ADVICE OF AN ATTORNEY IS APPROPRIATE, AND THAT she HAS BEEN AFFORDED THE TIME AND OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL.  Borrower hereby represents that she has either consulted with counsel or has expressly waives the right to do.

**11.5   Successors; Assigns.**  This Agreement shall be binding on and inure to the benefit of the heirs, executors, administrators, legal representatives, successors and assigns of the parties.  Lender reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Lender's rights and benefits under each of the Loan Documents.  In connection therewith, Lender may disclose all documents and information which Lender now has or may hereafter acquire relating to any credit extended by Lender to Borrower, or the business of any Obligor, or any Collateral required hereunder.

**11.6   Entire Agreement; Amendment.**  This Agreement and each other of the Loan

Documents constitute the entire agreement between Borrower and Lender with respect to any extension of credit by Lender subject hereto and supersede all prior negotiations, communications, discussions and correspondence concerning the subject matter hereof. This Agreement may be amended or modified only by a written instrument executed by each party hereto.

**11.7    No Third Party Beneficiaries.** This Agreement is made and entered into for the sole protection and benefit of the parties hereto and their respective permitted successors and assigns, and no other person or entity shall be a third party beneficiary of, or have any direct or indirect cause of action or claim in connection with, this Agreement or any other of the Loan Documents to which it is not a party.

**11.8    Time.** Time is of the essence of each and every provision of this Agreement and each of the Loan Documents.

**11.9    Severability of Provisions.** If any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or any remaining provisions of this Agreement.

**11.10    Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, except to the extent that Lender has greater rights or remedies under Federal law, in which case such choice of law shall not be deemed to deprive Lender of such rights and remedies as may be available under Federal law.   **THE UNDERSIGNED SUBMITS TO THE JURISDICTION OF THE COURTS OF THE COMMONWEALTH OF MASSACHUSETTS FOR ALL PURPOSES WITH RESPECT TO THIS AGREEMENT, THE NOTE, ANY COLLATERAL GIVEN TO SECURE HER LIABILITIES, OBLIGATIONS AND INDEBTEDNESS TO MAFC, AND HER RELATIONSHIP WITH MAFC.** The parties hereto waive any right to trial by jury in any action or proceeding relating to this Agreement or the other Loan Documents or any transaction hereunder or thereunder.

[SIGNATURES ON NEXT PAGE]

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed, under seal, as of the day and year first written above in Las Vegas, Nevada.

Lender: Massachusetts Asset Financing Corp.            Borrower:

By: _____                            _____
                                                        Alicia Clark Bradley
Its: _____

## COMMONWEALTH OF MASSACHUSETTS

County of Suffolk, SS.
                                                        February 16, 1999

        Then personally appeared the above-named Alicia Clark Bradley and made oath that the foregoing Loan Agreement is her free act and deed, before me,

                                                        _____

(SEAL)                                                  Notary
                                                        My Commission Expires: _____

                                                        MY COMMISSION EXPIRES JUNE 16, 2000

118224(1)JSALON
UA-UA

000018

## FIRST AMENDMENT TO LOAN AGREEMENT DATED DECEMBER    , 1999

This First Amendment to Loan Agreement (the "First Amendment") is entered into as of the ___ day of December, 1999, by and between Massachusetts Asset Financing Corp., a Massachusetts corporation (the "Lender") and Alicia Clark Bradley of Fairfield, California (the "Borrower")

### WITNESSETH

**WHEREAS,** on February 16, 1999 Lender loaned Borrower the principal amount of $130,000.00 pursuant to the terms of a Loan Agreement and a Promissory Note each dated February 16, 1999 (together the "Loan Documents");

**WHEREAS,** Borrower has requested that Lender advance an additional $15,629.64 pursuant to the terms of that certain First Amended and Restated Promissory Note dated the date hereof;

**WHEREAS,** Lender is willing to do so on the terms recited herein;

**WHEREAS,** to further effectuate the advance contemplated herein the parties have agreed that the Loan Agreement and this First Amendment thereto should be governed by the laws of the Commonwealth of Massachusetts.

**WHEREAS,** Section 11.6 of the Loan Agreement provides that it can be amended or modified by written amendment signed by the parties thereto, and the parties wish to hereby amend certain provisions of the Loan Agreement;

**WHEREAS,** terms not defined herein shall have the meaning assigned to then in the Loan Agreement.

**NOW, THEREFORE,** the parties hereto do evidence their understanding by execution herein below and agree to the following:

1.  The Borrower has delivered to the Lender on this day the First Amended and Restated Promissory Note, and the Lender has agreed to advance an additional $15,629.64 to the Borrower;

2.  The parties hereby agree that all references to the "Note" contained in the Loan Agreement shall mean that certain First Amended and Restated Promissory Note in the amount of $331,500.00 (which amount reflects principal, finance charges and agent fees) executed by the Borrower on the date hereof.

3.  In all other respects, the parties reaffirm the provisions contained in the Loan Agreement, and each and every obligation, liability, covenant, representation, and warranty contained herein shall also be deemed to be part of the Loan Agreement as though fully set forth therein nunc pro tunc.

000048

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed, under seal, as of the day and year first written above.

Lender: Massachusetts Asset Financing Corp.

By: _____

Its: _____

Borrower:

_____
Alicia Clark Bradley

STATE OF CALIFORNIA

435-27 9182 SS.

December 7, 1999

Then personally appeared the above-named Alicia Clark Bradley and made oath that the foregoing First Amendment to Loan Agreement is her free act and deed, before me,

(SEAL)

Notary Jesse Rubio
My Commission Expires: 8/14/2001



JESSE RUBIO
Commission # 1151253
Notary Public - California
Riverside County
My Comm. Expires Aug 14, 2001

# EXHIBIT B

## MASSACHUSETTS ASSET FINANCING CORP.

### Promissory Note

$232,050.00

Boston, Massachusetts                                February 16, 1999

FOR VALUE RECEIVED, the undersigned (jointly and severally if more than one) promises to pay to the order of MASSACHUSETTS ASSET FINANCING CORP. (hereinafter, with any subsequent holder, "MAFC") at any office of MAFC in Massachusetts designated by MAFC from time to time, the sum of Two Hundred Thirty-Two Thousand and Fifty Dollars ($232,050.00) which includes prepaid fees and interest at an effective annual interest rate of 19.572%, to be repaid in seven (7) equal annual payments each in the amount of Thirty Three Thousand One Hundred Fifty Dollars ($33,150.00) commencing on the 13th day of September, 1999, and continuing thereafter to be made on the 13th day of September each of 2000, 2001, 2002, 2003, 2004 and 2005.  The entire outstanding balance hereof shall be due and payable on September 13, 2005.

Upon the acceleration of this Note by MAFC following the occurrence of an Event of Default (as hereinafter defined), interest shall accrue on the outstanding balance of this Note at the annual rate of ten percent (10%) per annum, provided however that at all times following September 13, 2005 that any portion of this Note remains unpaid, interest shall accrue on the outstanding balance of this Note at the annual rate of forty percent (40%) per annum. In addition, the undersigned shall pay a late charge equal to five percent (5%) of any amount not paid within ten (10) days of the due date thereof.

The undersigned may not prepay this Note at any time.

Any payments received by MAFC on account of this Note prior to demand or acceleration shall be applied first to any costs, expenses, or charges then owed MAFC by the undersigned, second to accrued and unpaid interest, and third to the unpaid balance hereof. Any payments so received after demand or acceleration shall be applied in such manner as MAFC may determine. The undersigned hereby authorizes MAFC to charge any deposit account which the undersigned may maintain with MAFC for any payment required hereunder.

MAFC, at its option, may declare the entire unpaid balance of this Note and all payments due hereunder to be immediately due and payable without demand, notice or protest (which are hereby waived) upon the occurrence of any one or more of the following events (herein, "Events of Default"):

(a)    The failure by the undersigned to pay any amount due under this Note when due;

(b)    The failure by the undersigned to promptly, punctually, and faithfully pay upon demand (or when due, if not payable on demand) or otherwise to perform, discharge, or comply with any of the undersigned's liabilities, obligations, indebtedness or covenants to MAFC in this Note or in that certain Loan Agreement of even date between the undersigned and MAFC (the "Loan Agreement", and collectively with this Note, and the liabilities, obligations, indebtedness, and covenants described in (a) and (b), the "Liabilities");

(c)    The failure by Casino Data Systems ("CDS") to pay Fifty-Five Thousand Two Hundred Forty-Five and 85/100 Dollars ($55,245.85) to or for the benefit of the undersigned on September 13th of each calendar year during the term hereof;

(d)    The termination by the undersigned of any instruction given by her to CDS pursuant to the Loan Agreement, or the failure by CDS to recognize and/or respond fully and in accordance with any instruction or request delivered by the undersigned in accordance with the Loan Agreement, or by MAFC pursuant to any authority granted by the undersigned;

000019

(e)      The occurrence or the continuing recognition by CDS of any instruction received by CDS to consider any party other than the undersigned's estate or MAFC as the party entitled to all payments from CDS subsequent to the death of the undersigned;

(f)      The occurrence of any event of default under any agreement between MAFC and the undersigned, or instrument or paper given MAFC by the undersigned, whether such agreement, instrument, or paper now exists or hereafter arises (notwithstanding that MAFC may not have exercised its rights upon default under any such other agreement, instrument, or paper);

(g)      (1) Any act by, against, or relating to the undersigned, or her property or assets, which act constitutes the application for, consent to, or sufferance of the appointment of a receiver, trustee, or other person, pursuant to court action or otherwise, over all or any part of the undersigned's property; (2) the granting of any trust, mortgage, or execution of an assignment for the benefit of the creditors of the undersigned, or the occurrence of any other voluntary or involuntary liquidation or extension of debt agreement for the undersigned; (3) the failure by the undersigned to generally pay the debts of the undersigned as they mature; (4) adjudication of bankruptcy or insolvency relative to the undersigned; (5) the entry of an order for relief or similar order with respect to the undersigned in any proceeding pursuant to the Bankruptcy Reform Act of 1978 (commonly referred to as the Bankruptcy Code) or any other federal bankruptcy law; (6) the filing of any complaint, application, or petition by or against the undersigned initiating any matter in which the undersigned is or may be granted any relief from the debts of the undersigned pursuant to the Bankruptcy Code or to any other insolvency statute or procedure; (7) the calling or sufferance of a meeting of creditors of the undersigned; (8) the meeting by the undersigned with a formal or informal creditors' committee of the undersigned; and/or (9) the offering by, or entering into by, the undersigned of any composition, extension or any other arrangement seeking relief or extension for the debts of the undersigned, or the initiation of any other judicial or non-judicial proceeding or agreement by, against, or including the undersigned, which seeks or intends to accomplish a reorganization or arrangement with creditors; or

(h)      The death of the undersigned.

No delay or omission by MAFC in exercising or enforcing any of MAFC's powers, rights, privileges, remedies, or discretions hereunder shall operate as a waiver thereof on that occasion nor on any other occasion. No waiver of any default hereunder shall operate as a waiver of any other default hereunder, nor as a continuing waiver.

The undersigned shall indemnify, defend, and hold MAFC harmless against any claim brought or threatened against MAFC by the undersigned or by any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of MAFC's relationship with the undersigned (each of which may be defended, compromised, settled, or pursued by MAFC with counsel of MAFC's selection, but at the expense of the undersigned).

The undersigned will pay on demand all attorneys' reasonable fees and out-of-pocket expenses incurred by MAFC in the administration of all Liabilities of the undersigned to MAFC, including, without limitation, costs and expenses associated with travel on behalf of MAFC. The undersigned will also pay on demand, all attorneys' reasonable fees, out-of-pocket expenses incurred by MAFC's attorneys and all costs incurred by MAFC which are directly or indirectly related to the preservation, protection, collection or enforcement of any of MAFC's rights against the undersigned and against any collateral given MAFC to secure this Note or any other Liabilities of the undersigned (whether or not suit is instituted by or against MAFC).

The undersigned waives presentment, demand, notice, and protest, and also waives any delay on the part of the holder hereof. The undersigned assents to any extension or other indulgence (including, without limitation, the release or substitution of collateral) permitted the undersigned or any endorser or guarantor by MAFC with respect to this Note and/or any collateral given to secure this Note or any extension or other indulgence, as described above, with respect to any other liability or any

collateral given to secure any other liability of the undersigned to MAFC.

This Note shall be binding upon the undersigned and upon her heirs, successors, assigns, and representatives, and shall inure to the benefit of MAFC and its successors, endorsees, and assigns.

The undersigned hereby makes the following waiver, knowingly, voluntarily, and intentionally, and understands that MAFC, in entering into any loan arrangements or making any financial accommodations to the undersigned, whether now or in the future, is relying on such waiver. THE UNDERSIGNED HEREBY IRREVOCABLY WAIVES ANY PRESENT OR FUTURE RIGHT OF THE UNDERSIGNED TO A JURY IN ANY TRIAL OF ANY CASE OR CONTROVERSY IN WHICH MAFC IS OR BECOMES A PARTY (WHETHER SUCH CASE OR CONTROVERSY IS INITIATED BY OR AGAINST MAFC OR IN WHICH MAFC IS JOINED AS A PARTY LITIGANT), WHICH CASE OR CONTROVERSY ARISES OUT OF OR IS IN RESPECT OF, ANY RELATIONSHIP BETWEEN THE UNDERSIGNED OR ANY OTHER PERSON AND MAFC.

The undersigned authorizes MAFC to complete this Note if delivered incomplete in any respect.

This Note is delivered to MAFC at one of its offices in Massachusetts, shall be governed by the laws of The Commonwealth of Massachusetts, and shall take effect as a sealed instrument. The undersigned submits to the jurisdiction of the courts of The Commonwealth of Massachusetts for all purposes with respect to this Note, any collateral given to secure his liabilities, obligations and indebtedness to MAFC, and his relationship with MAFC.

MAKER ("the undersigned"):

_Alicia Clark Bradley_

Alicia Clark Bradley

WITNESS to Signature (Signed in my presence in Boston, Massachusetts):

_Jonathan D. Salon_
(Name)

(Address)

_123 W. Canton Street_
_Boston, MA 02116_

COMMONWEALTH OF MASSACHUSETTS

County of Suffolk, SS.

February 16, 1999

Then personally appeared the above-named Alicia Clark Bradley, in Boston, Massachusetts, and made oath that the foregoing is her free act and deed, before me.

_Laura A. Bourbeau_
Notary
My Commission Expires: _____

MY COMMISSION EXPIRES JUNE 16, 2000

(SEAL)

116217(1)-JSALON
UA-UA

000021

# EXHIBIT C

THIS SPACE FOR USE OF FILING OFFICER

## FINANCING STATEMENT — FOLLOW INSTRUCTIONS CAREFULLY
This Financing Statement is presented for filing pursuant to the Uniform Commercial Code
and will remain effective, with certain exceptions, for 5 years from date of filing.

| A. NAME & TEL. # OF CONTACT AT FILER (optional) | B. FILING OFFICE ACCT.# (optional) |
|---|---|

C. RETURN COPY TO: (Name and Mailing Address)

```
Ms. Christina Trifone
Lane Altman & Owens LLP
101 Federal Street
Boston, MA  02110
```

D. OPTIONAL DESIGNATION (if applicable): [ ] LESSOR/LESSEE [ ] CONSIGNOR/CONSIGNEE [ ] NON-UCC FILING

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b)

1a. ENTITY'S NAME

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Clark Bradley | Alicia | | |

| 1c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
|---|---|---|---|---|
| 1597 Northwood Drive | Fairfield | CA | USA | 94533 |

| 1d. S.S. OR TAX I.D.# | OPTIONAL ADD'NL INFO RE ENTITY DEBTOR | 1e. TYPE OF ENTITY | 1f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | 1g. ENTITY'S ORGANIZATIONAL I.D.#, if any | NONE |
|---|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b)

2a. ENTITY'S NAME

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
|---|---|---|---|---|

| 2d. S.S. OR TAX I.D.# | OPTIONAL ADD'NL INFO RE ENTITY DEBTOR | 2e. TYPE OF ENTITY | 2f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | 2g. ENTITY'S ORGANIZATIONAL I.D.#, if any | NONE |
|---|---|---|---|---|---|

3. SECURED PARTY'S (ORIGINAL S/P or ITS TOTAL ASSIGNEE) EXACT FULL LEGAL NAME - Insert only one secured party name (3a or 3b)

3a. ENTITY'S NAME
Massachusetts Asset Financing Corp.

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
|---|---|---|---|---|
| 575 Mistic Drive | Marston Mills | MA | USA | 02648 |

4. This FINANCING STATEMENT covers the following types or items of property:

**See Exhibit A attached hereto.**

| 5. CHECK BOX (if applicable) | This FINANCING STATEMENT is signed by the Secured Party instead of the Debtor to perfect a security interest (a) in collateral already subject to a security interest in another jurisdiction when it was brought into this state, or when the debtor's location was changed to this state, or (b) in accordance with other statutory provisions (additional data may be required) | 7. If filed in Florida (check one) [ ] Documentary [ ] Documentary stamp stamps tax paid [ ] tax not applicable |
|---|---|---|

| 6. REQUIRED SIGNATURE(S) *Alicia Clark Bradley* | 8. This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS Attach Addendum (if applicable) |
|---|---|
| *X Mobell, V.P. MA Asset Finc. Corp* | 9. Check to REQUEST SEARCH CERTIFICATE(S) on Debtor(s) (ADDITIONAL FEE) (optional) [ ] All Debtors [ ] Debtor 1 [ ] Debtor 2 |

REORDER FROM
Registré, Inc.
314 PIERCE ST,
P.O. BOX 215
ANOKA, MN 55303

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIV. ACTION NO. 04-10053 RWZ

|  |  |
|---|---|
| MASSACHUSETTS ASSET FINANCING CORPORATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| ALICIA CLARK BRADLEY, | ) ) |
| Defendant, | ) ) |
| vs. | ) ) |
| UNITED STATES OF AMERICA Reach and Apply Defendant, Trustee Defendant. | ) ) ) ) ) ) |

**AFFIDAVIT OF PHILIP NADEL**

Philip Nadel, deposes and says:

1.      I am over eighteen years of age.  I am the President of Massachusetts Assets Financing Corp. ("MAFCO"), the plaintiff in the above-captioned matter. I have personal knowledge of the facts set forth in this affidavit.  I submit this affidavit in support of MAFCO's motion for summary judgment against defendant Alicia Clark Bradley ("Bradley").

2.      MAFCO is a Massachusetts corporation, duly authorized to engage in the business of lending money.

3.      On or about February 16, 1999, Bradley entered into a loan agreement with MAFCO ("Loan Agreement") whereby MAFCO loaned Bradley $130,000.00. (A true and correct copy of the Loan Agreement is attached hereto as Exhibit 1).

4.      Pursuant to the Loan Agreement, Bradley executed a Demand Promissory Note ("Note") on or about February 16, 1999. (A true and correct copy is attached hereto as Exhibit 2).  The principal plus accrued interest was payable in seven (7) annual payments each in the amount of $33,150.00 commencing September 13,

1

1999 through and including September 13, 2005. The total amount due under the Note was $232,050.00.

5.    On or about September 13, 1999, Bradley made the first payment of $33,150 due under the Note.

6.    On or about December 7, 1999, Bradley executed an amended loan agreement ("Amended Loan Agreement") whereby MAFCO loaned Bradley and additional $15,629.64. (A true and correct copy is attached hereto as Exhibit 3). At this point, Bradley's obligation to MAFCO increased to $331,500.00.

7.    After the Amended Loan Agreement was executed, the number of payments under the Note was fixed at 10 and Bradley's annual payment was set at $33,150.00.

8.    On or about September 13, 2000, Bradley made the second payment of $33,150 due under the Note.

9.    No payment was received by MAFCO on September 13, 2001 from Bradley and no further payments by Bradley have ever been made. In accordance with the terms of the Note, Loan Agreement and Amended Loan Agreement, Bradley was in default of her payment obligations to MAFCO.

10.   After Bradley failed to make the September 13, 2001 payment, I learned from the company processing her prize payments that Bradley had received a lump sum payment of the remaining portion of her casino jackpot winnings. Bradley did not disclose this action to MAFCO which was a breach of the Note, Loan Agreement and Amended Loan Agreement.

11.   After Bradley failed to make the September 13, 2001 payment, I instructed MAFCO employees and agents to contact Bradley and ascertain the reason, if any, for her failure to make the payment. To that end, letters were mailed to Bradley and telephone calls were made to her.

12.   A short time after September 13, 2001, I learned that Bradley had moved from her Fairfield, California home. Bradley left no forwarding address and never informed MAFCO that she had moved. As a result, MAFCO had no knowledge of where Bradley lived.

13.   In January 2004, I learned that Bradley was residing in Grayson, Louisiana. At that point, I instructed counsel to file the present action.

14.   As of the date of this affidavit, Bradley has not made any payments to MAFCO other than the two payments described above.

2

15.   According to the terms of the Note, Loan Agreement and Amended Loan
      Agreement, the amount due and payable to MAFCO is:

      (a)   payments due pursuant to the Note:              $265,200.00

      (b)   5% late fee: ($265,200 x 5%)                    $ 13,260.00

      (c)   10% default interest:
            ($278,460.00 x 1,088 days x $72.6575 per day)   $ 73,238.76

16.   The total amount claimed by MAFCO pursuant to the Note, Loan Agreement and
      Amended Loan Agreement, is: $351,698.76.

17.   This affidavit is executed by me in accordance with Rule 56 of the Federal Rules
      of Civil Procedure, for the purpose of enabling the MAFCO to obtain summary
      judgment against the defendant.

Signed under the pains and penalties of perjury, this 16 day of June, 2004.

6857.16/324043                          Philip Nadel

3

# NUMBER 1

# LOAN AGREEMENT

This Loan Agreement (the "Agreement") is entered into as of the 16th day of February, 1999, between Massachusetts Asset Financing Corp., a Massachusetts corporation (the "Lender"), and Alicia Clark Bradley of Fairfield, California (the "Borrower").

## W I T N E S S E T H

**WHEREAS**, Borrower has requested that Lender lend her $130,000.00; and

**WHEREAS**, Lender is willing to make such loan and provide such financial accommodations on the terms and conditions set forth herein;

**NOW, THEREFORE**, in consideration of the mutual conditions and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.0    **DEFINITIONS**.  All terms used herein which are defined in Article 1 or Article 9 of the Uniform Commercial Code shall have the meanings given therein unless otherwise defined in this Agreement. For purposes of this Agreement, the following terms shall have the respective meanings given to them below:

1.1    "**Cash Collateral Account**" shall have the meaning set forth in Section 5.1 hereof.

1.2    "**Collateral**" shall mean the Cash Collateral Account and the Extreme Jackpot Payments.

1.3    "**Event of Default**" shall mean the occurrence or existence of any event or condition described in Section 9.1 hereof.

1.4    "**Extreme Jackpot Payments**" shall mean those annual payments of Fifty Five Thousand Two Hundred Forty-Five and 85/100 Dollars ($55,245.85) due to Borrower or to be paid to Borrower by Casino Data Systems ("CDS") acknowledged in the letter attached hereto as Exhibit A (the "CDS Letter").

1.5    "**Loan Documents**" shall mean, collectively, this Agreement, the Note, and all other agreements, documents and instruments now or at any time hereafter executed and/or delivered by Borrower in connection with this Agreement, as the same now exist or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

1.6    "**Note**" shall have the meaning set forth in Section 2 hereof.

**2.0    LOAN.** Subject to and upon the terms and conditions contained herein, Lender agrees to loan Borrower the amount of $130,000.00 upon Borrower's execution and delivery to Massachusetts Asset Financing Corp. of a promissory note in the form and substance as set forth as Exhibit B attached hereto (the "Note"), which Note shall be for the amount of Two Hundred Thirty Two Thousand and Fifty Dollars ($232,050.00) (which amount reflects principal, finance charges and agent's fees).

**3.0    GRANT OF SECURITY INTEREST.** As security for its indebtedness and other obligations to Lender hereunder, Borrower hereby pledges and grants Lender a security interest in and to the Extreme Jackpot Payments.

**4.0    CONDITIONS PRECEDENT.** The obligation of Lender to extend the credit contemplated by this Agreement is subject to the fulfillment to Lender's satisfaction in its sole determination of all of the following conditions:

    (a)    **Approval of Lender Counsel.** All legal matters incidental to the extension of credit by Lender shall be satisfactory to Lender's counsel.

    (b)    **Documentation.** Lender shall have received, unless waived by Lender, in form and substance satisfactory to Lender, each of the following, duly executed:

        (i)    This Agreement;
        (ii)    The Note;
        (iii)    The Power(s) of Attorney in the form and substance as set forth in Exhibit C attached hereto;
        (iv)    UCC-1 Financing Statement(s);
        (v)    A Letter of Notification to CDS in the form and substance as set forth in Exhibit D attached hereto (the "Notification Letter");
        (vi)    Signature Cards and Account Authorizations required to establish the Cash Collateral Account at Cape Cod Bank and Trust Company in South Yarmouth, Massachusetts, in the name of Lender and Borrower, as required; and
        (vii)    Such other documents as Lender may require under any other section of this Agreement.

    (c)    **Security Interests.** Lender shall have received evidence, in form and substance satisfactory to Lender, that Lender has a first priority security interest in and lien upon, the Collateral; and

    (d)    **Other Documents.** Lender shall have received, in form and substance satisfactory to Lender, all consents, waivers, acknowledgments, and other agreements from third persons which Lender may deem necessary or desirable in order to permit, protect and perfect its security interests in and liens upon the Collateral or to effectuate the provisions or purposes of this Agreement and the other Loan Documents.

    (e)    **CDS Approval.** Lender is under no obligation to extend the credit contemplated by this Agreement until such time as it receives confirmation, in form and

substance satisfactory to Lender, from CDS that the Extreme Jackpot Payments will be forwarded to the address requested by Borrower in the Notification Letter.

## 5.0  COLLECTION AND ADMINISTRATION.

### 5.1  Cash Collateral Account.

(a)  **Cash Collateral Account.**  Borrower shall, at Borrower's expense and in the manner requested by Lender from time to time, direct that all Extreme Jackpot Payments be deposited into a non-interest-bearing account maintained in Borrower's and Lender's names. Borrower hereby grants to Lender a security interest in such account over which Borrower shall have no control nor rights of withdrawal ("Cash Collateral Account").

(b)  **Application of Payments to Amounts Due.**  Extreme Jackpot Payments or other funds received will be applied to the Loan two (2) business days following the date of receipt by Lender of the advice of deposit that such payments or other funds have been deposited in the Cash Collateral Account. If and to the extent that any sums are received in the Cash Collateral Account in excess of the amounts due or to be due under the Note or the Loan Documents within ten (10) days thereafter, then Lender shall return such excess to Borrower. For example, if a deposit is made on September 13, 1999 in the amount of Fifty Five Thousand Two Hundred Forty-Five and 85/100 Dollars ($55,245.85) and the amount to be due under the Note between September 13 and September 23, 1999 is Thirty-Three Thousand One Hundred Fifty Dollars ($33,150.00), then Lender shall have the obligation to return Twenty-Two Thousand Ninety-Five and 85/100 Dollars ($22,095.85) directly to Borrower.

(c)  **Immediate Deposit.**  Borrower and all of her affiliates or agents shall, acting as trustee for Lender, receive, as the property of Lender, any monies, checks, notes, drafts, or any other payment relating to and/or proceeds of the Extreme Jackpot Payments which come into their possession or under their control and immediately upon receipt thereof, shall deposit or cause the same to be deposited in the Cash Collateral Account, or remit the same or cause the same to be remitted, in kind, to Lender. In no event shall the same be commingled with Borrower's own funds.

### 5.2.  Payments.

(a)  All amounts due under or received for application against amounts due under any of the Loan Documents shall be payable to the Cash Collateral Account, or such other place as Lender may designate from time to time. Lender may apply payments received or collected from Borrower or for the account of Borrower or in the Cash Collateral Account (including without limitation, the monetary proceeds of collections or of realization upon any Collateral) to the amounts then due under the Note or other Loan Documents, in such order and manner as Lender determines. At Lender's option, all principal, finance charges, fees, costs, expenses and other charges provided for in this Agreement or the other

118224(1)-JSALON
UA-IJA

Loan Documents may be charged directly to the Cash Collateral Account.

(b)    If after receipt of any payment of, or proceeds of Collateral applied to the payment of, any of Borrower's obligations to Lender under this Agreement, Lender is required to surrender or return such payment or proceeds to any person or entity for any reason, then the obligations intended to be satisfied by such payment or proceeds shall be reinstated and continue, and this Agreement shall continue in full force and effect as if such payment or proceeds had not been received by Lender.  Borrower shall be liable to pay to Lender, and does hereby indemnify and hold Lender harmless for the amount of any payments or proceeds surrendered or returned.

(c)    This Section 5.2 shall remain effective notwithstanding any contrary action which may be taken by Lender in reliance upon such payment or proceeds.  This Section 5.2 shall survive the payment of Borrower's obligations under the Loan Documents and the termination of this Agreement.

    5.3    **Additional Rights of Lender**.  Lender may, at its option, pay, purchase, contest, compromise or discharge any accounts, disputes, attachments, levies, taxes, claims, debts, liens, charges, security interests or encumbrances which in its judgment may affect or appear to affect the Collateral or its rights hereunder; in addition, Lender may pay for the maintenance and preservation of the Collateral.  The amounts of any payments made hereunder, together with all costs and expenses, including all attorneys' fees, are all to be repaid by Borrower to Lender.  Lender  may do anything, in its discretion, which it deems necessary for perfecting its security interest in any Collateral.

    6.    **REPRESENTATIONS AND WARRANTIES**.  Borrower makes the following representations and warranties to Lender, which representations and warranties shall survive the execution of this Agreement and shall continue in full force and effect until the full and final payment, and satisfaction and discharge, of all obligations of Borrower to Lender subject to this Agreement.

    (a)    **Authorization and Validity**.  The Loan Documents have been duly authorized, and upon their execution and delivery in accordance with the provisions hereof will constitute legal, valid and binding agreements and obligations of Borrower or the party which executes the same, enforceable in accordance with their respective terms.

    (b)    **No Violation**.  The execution, delivery and performance by Borrower of each of the Loan Documents do not violate any provision of any law or regulation, or result in a breach of or default under any contract, obligation, indenture or other instrument to which Borrower is a party or by which Borrower may be bound.

    (c)    **Payments Remaining Due**.  An Extreme Jackpot Payment of Fifty Five Thousand Two Hundred Forty-Five and 85/100 Dollars ($55,245.85) was made on September 16, 1998 in accordance with the CDS Letter. Payments of Fifty Five Thousand Two Hundred Forty-Five and 85/100 Dollars ($55,245.85) for each of the years 1999 to 2017 remain unpaid and owing to Borrower, and Borrower has not received any notice, nor has any knowledge of any reason, that any

118224(1)-JSALON
UA-UA

000012

payments described in the CDS Letter as being payable to her on dates after this date will not be fully and timely paid. All such payments are genuine, bona fide, existing obligations unconditionally owed to Borrower, free of liens and encumbrances and without defense or offset.

(d)    **Address.**  Borrower's sole address is, and all of the books, files, and records pertaining to the Collateral shall be kept only at, the address set forth in Section 11.2 of this Agreement; Borrower shall not relocate or change her sole address or any business office from the address indicated without thirty (30) days prior written notice to Lender; and

(e)    **Ownership.**  Borrower is, and will continue to be, the sole and complete owner of the Collateral free from any liens, security interests or encumbrances of any nature or kind whatsoever unless otherwise agreed to in writing by Lender, and Borrower, at her expense, will defend the Collateral against the claims and demands of all persons and entities. Borrower has not named, specified or directed CDS to pay, and will not name, specify or direct CDS to pay, any of the Collateral to any party or beneficiary other than her estate in the event of her death or disability.

**7.    AFFIRMATIVE COVENANTS.**  Borrower covenants that so long as any liabilities (whether direct or contingent, liquidated or unliquidated) of Borrower to Lender under any of the Loan Documents remain outstanding, and until payment in full of all obligations of Borrower subject hereto, Borrower shall:

(a)    **Punctual Payments.**  Punctually pay all principal, interest, fees or other liabilities due under any of the Loan Documents at the times and place and in the manner specified therein.

(b)    **Taxes and Other Liabilities.**  Pay and discharge when due any and all indebtedness, obligations, assessments and taxes, including without limitation, federal and state income taxes.

(c)    **Notice to Lender.**  Promptly, but in no event more than five (5) days after the occurrence of each such event or matter, give written notice to Lender in reasonable detail of the occurrence of any Event of Default, or any condition, event or act which with the giving of notice or the passage of time or both would constitute such an Event of Default.

(d)    **Further Assurances.**  At the request of Lender, at any time and from time to time, duly execute and deliver, or cause to be duly executed and delivered, such further agreements, documents and instruments, and do or cause to be done such further acts as may be necessary or proper to evidence, perfect, maintain and enforce the security interests and the priority thereof in the Collateral and to otherwise effectuate the provisions or purposes of this Agreement or any of the other Loan Documents, at Borrower's expense. Where permitted by law, Borrower hereby authorizes Lender to execute and file one or more Uniform Commercial Code financing statements signed only by Lender.

**8.   NEGATIVE COVENANTS.** Borrower further covenants that so long as Lender remains committed to Borrower pursuant to the terms of this Agreement or any liabilities (whether direct or contingent, liquidated or unliquidated) of Borrower to Lender under any of the Loan Documents remaining outstanding, and until payment in full of all obligations of Borrower subject hereto, Borrower will not without Lender's prior written consent:

(a)   Mortgage, pledge, grant or permit to exist a security interest in, or lien upon, any of the Collateral.

(b)   Transfer, sell, assign, conceal or in any manner dispose of the Collateral or permit the Collateral to be attached, seized, levied upon or confiscated, or permit the Collateral to be used in violation of any law or ordinance; or

(c)   Directly or indirectly communicate, in any way, with CDS or any successor thereto, which has the effect of altering or delaying the delivery of the Extreme Jackpot Payments from the manner and time described in the first sentence of the Notification Letter, or naming or specifying that the Extreme Jackpot Payments are to be made to any party other than Lender's estate in the event of her death or disability.

**9.0   EVENTS OF DEFAULT.**

**9.1   Events of Default.** The occurrence of any of the following shall constitute an "Event of Default" under this Agreement:

(a)   Borrower shall fail to pay when due any amounts payable under any of the Loan Documents;

(b)   Any default in the payment or performance of any obligation, or any defined Event of Default, under this Agreement or any of the other Loan Documents;

(c)   CDS shall fail to send any Extreme Jackpot Payment at the scheduled dates and otherwise in accordance with the terms of Borrower's Notification Letter;

(d)   There shall exist or occur any event or condition which Lender, in good faith, believes impairs, or is substantially likely to impair, the prospect of payment or performance by Borrower of its obligations under any of the Loan Documents;

(e)   The death or incapacity of Borrower; or

(f)   The sale, transfer, hypothecation, assignment or encumbrance, whether voluntary, involuntary or by operation of law of the Collateral, or the attempt by Borrower to accomplish any such sale, transfer, hypothecation, assignment or encumbrance.

**9.2   Remedies.** If an Event of Default shall occur, (a) any indebtedness of Borrower under any of the Loan Documents, any term thereof to the contrary notwithstanding, shall at Lender's option and without notice become immediately due and payable without

118224(1)-JSALON
UA-UA

000014

presentment, demand, protest or notice of dishonor, all of which are hereby expressly waived by Borrower; and (b) Lender shall have all rights, powers and remedies available under each of the Loan Documents, or accorded by law, including without limitation the right to resort to any or all security for any credit accommodation from Lender subject hereto and to exercise any or all of the rights of a beneficiary or secured party pursuant to applicable law. All rights, powers and remedies of Lender in connection with each of the Loan Documents may be exercised at any time by Lender and from time to time after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

### 10.0   TERMINATION.

(a)     **Maturity Date.**  Upon the maturity of the Note, Borrower shall pay to Lender, in full, all outstanding and unpaid obligations under this Agreement and the other Loan Documents and shall furnish Cash Collateral to Lender in such amounts as Lender determines are reasonably necessary to secure Lender from loss, cost, damage or expense, including attorneys' fees and legal expenses, in connection with any contingent obligations, including checks or other payments provisionally credited to the obligations and/or as to which Lender has not yet received final and indefeasible payment. Interest shall be due until and including the next business day, if the amounts so paid by Borrower to the bank account designated by Lender are received in such bank account later than 12:00 noon, New York time.

(b)     **Continuing Obligations.**  No termination of this Agreement or the other Loan Documents shall relieve or discharge Borrower of its respective duties, obligations and covenants under this Agreement or the other Loan Documents until all Borrower's obligations under this Agreement and the other Loan Documents have been fully and finally discharged and paid, and Lender's continuing security interest in the Collateral and the rights and remedies of Lender hereunder, under the other Loan Documents and applicable law, shall remain in effect until all such obligations have been fully and finally discharged and paid.

### 11.0   MISCELLANEOUS.

11.1    **No Waiver.**  No delay, failure or discontinuance of Lender in exercising any right, power or remedy under any of the Loan Documents shall affect or operate as a waiver of such right, power or remedy; nor shall any single or partial exercise of any such right, power or remedy preclude, waive or otherwise affect any other or further exercise thereof or the exercise of any other right, power or remedy. Any waiver, permit, consent or approval of any kind by Lender of any breach of or default under any of the Loan Documents must be in writing and shall be effective only to the extent set forth in such writing.

11.2    **Notices.**  All notices, requests and demands which any party is required or may desire to give to any other party under any provision of this Agreement must be in writing delivered to each party at the following address:

BORROWER: Alicia Clark Bradley

1597 Northwood Drive
Fairfield, CA   94533

With a Copy to:   Howard S. Fisher, Esquire
~~Greenbaum, Nagel, Fisher & Hammelburg~~
185 Devonshire Street
Boston, MA   02110

LENDER:   Massachusetts Asset Financing Corp.
575 Mistic Drive
Marstons Mills, Massachusetts 02648
Attention: Joel Nadel

With a Copy to:   Jonathan D. Salon, Esq.
Lane Altman & Owens LLP
101 Federal Street
Boston, MA 02110

or to such other address as any party may designate by written notice to all other parties.
Each such notice, request and demand shall be deemed given or made as follows: (a) if sent
by hand delivery, upon delivery; (b) if sent by mail, upon the earlier of the date of receipt or
three (3) days after deposit in the U.S. mail, first class and postage prepaid; and (c) if sent by
telecopy, upon receipt.

**11.3  Costs, Expenses and Attorneys' Fees.** Borrower shall pay to Lender
immediately upon demand the full amount of all payments, advances, charges, costs and
expenses, including reasonable attorneys' fees, incurred by Lender in connection with the
enforcement of Lender's rights and/or the collection of any amounts which become due to
Lender under any of the Loan Documents, and the prosecution or defense of any action in any
way related to any of the Loan Documents, including without limitation any action for
declaratory relief, and including any of the foregoing incurred in connection with any
bankruptcy proceeding relating to Borrower.

**11.4  Consultations with Counsel.** Borrower hereby acknowledges that she
UNDERSTANDS THAT THIS INSTRUMENT CREATES BINDING OBLIGATIONS WITH RESPECT
TO WHICH THE ADVICE OF AN ATTORNEY IS APPROPRIATE, AND THAT she HAS BEEN
AFFORDED THE TIME AND OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL. Borrower
hereby represents that she has either consulted with counsel or has expressly waives the right
to do.

**11.5  Successors; Assigns.** This Agreement shall be binding on and inure to the
benefit of the heirs, executors, administrators, legal representatives, successors and assigns
of the parties. Lender reserves the right to sell, assign, transfer, negotiate or grant
participations in all or any part of, or any interest in, Lender's rights and benefits under each
of the Loan Documents. In connection therewith, Lender may disclose all documents and
information which Lender now has or may hereafter acquire relating to any credit extended by
Lender to Borrower, or the business of any Obligor, or any Collateral required hereunder.

**11.6  Entire Agreement; Amendment.** This Agreement and each other of the Loan

118224(1)/JSALON
UA-UA

000016

Documents constitute the entire agreement between Borrower and Lender with respect to any extension of credit by Lender subject hereto and supersede all prior negotiations, communications, discussions and correspondence concerning the subject matter hereof. This Agreement may be amended or modified only by a written instrument executed by each party hereto.

**11.7    No Third Party Beneficiaries.** This Agreement is made and entered into for the sole protection and benefit of the parties hereto and their respective permitted successors and assigns, and no other person or entity shall be a third party beneficiary of, or have any direct or indirect cause of action or claim in connection with, this Agreement or any other of the Loan Documents to which it is not a party.

**11.8    Time.** Time is of the essence of each and every provision of this Agreement and each of the Loan Documents.

**11.9    Severability of Provisions.** If any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or any remaining provisions of this Agreement.

**11.10    Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, except to the extent that Lender has greater rights or remedies under Federal law, in which case such choice of law shall not be deemed to deprive Lender of such rights and remedies as may be available under Federal law. **THE UNDERSIGNED SUBMITS TO THE JURISDICTION OF THE COURTS OF THE COMMONWEALTH OF MASSACHUSETTS FOR ALL PURPOSES WITH RESPECT TO THIS AGREEMENT, THE NOTE, ANY COLLATERAL GIVEN TO SECURE HER LIABILITIES, OBLIGATIONS AND INDEBTEDNESS TO MAFC, AND HER RELATIONSHIP WITH MAFC.** The parties hereto waive any right to trial by jury in any action or proceeding relating to this Agreement or the other Loan Documents or any transaction hereunder or thereunder.

[SIGNATURES ON NEXT PAGE]

118224(1)-JSALON
UA-UA

000017

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed, under seal, as of the day and year first written above in Las Vegas, Nevada.

Lender: Massachusetts Asset Financing Corp.          Borrower:

By: _____          _Alicia Clark Bradley_

Its: ___Vice-Pres.___                                   Alicia Clark Bradley

## COMMONWEALTH OF MASSACHUSETTS

County of Suffolk, SS.

February 16, 1999

Then personally appeared the above-named Alicia Clark Bradley and made oath that the foregoing Loan Agreement is her free act and deed, before me,

(SEAL)                                                   Notary
                                                         My Commission Expires: _____

MY COMMISSION EXPIRES JUNE 16, 2000

118224(1)JSALON
UA-UA

000018

# NUMBER 2

## MASSACHUSETTS ASSET FINANCING CORP.

### Promissory Note

$232,050.00

Boston, Massachusetts

February 16, 1999

FOR VALUE RECEIVED, the undersigned (jointly and severally if more than one) promises to pay to the order of MASSACHUSETTS ASSET FINANCING CORP. (hereinafter, with any subsequent holder, "MAFC") at any office of MAFC in Massachusetts designated by MAFC from time to time, the sum of Two Hundred Thirty-Two Thousand and Fifty Dollars ($232,050.00) which includes prepaid fees and interest at an effective annual interest rate of 19.572%, to be repaid in seven (7) equal annual payments each in the amount of Thirty Three Thousand One Hundred Fifty Dollars ($33,150.00) commencing on the 13th day of September, 1999, and continuing thereafter to be made on the 13th day of September each of 2000, 2001, 2002, 2003, 2004 and 2005.  The entire outstanding balance hereof shall be due and payable on September 13, 2005.

Upon the acceleration of this Note by MAFC following the occurrence of an Event of Default (as hereinafter defined), interest shall accrue on the outstanding balance of this Note at the annual rate of ten percent (10%) per annum, provided however that at all times following September 13, 2005 that any portion of this Note remains unpaid, interest shall accrue on the outstanding balance of this Note at the annual rate of forty percent (40%) per annum.  In addition, the undersigned shall pay a late charge equal to five percent (5%) of any amount not paid within ten (10) days of the due date thereof.

The undersigned may not prepay this Note at any time.

Any payments received by MAFC on account of this Note prior to demand or acceleration shall be applied first to any costs, expenses, or charges then owed MAFC by the undersigned, second to accrued and unpaid interest, and third to the unpaid balance hereof.  Any payments so received after demand or acceleration shall be applied in such manner as MAFC may determine.  The undersigned hereby authorizes MAFC to charge any deposit account which the undersigned may maintain with MAFC for any payment required hereunder.

MAFC, at its option, may declare the entire unpaid balance of this Note and all payments due hereunder to be immediately due and payable without demand, notice or protest (which are hereby waived) upon the occurrence of any one or more of the following events (herein, "Events of Default"):

(a)      The failure by the undersigned to pay any amount due under this Note when due;

(b)      The failure by the undersigned to promptly, punctually, and faithfully pay upon demand (or when due, if not payable on demand) or otherwise to perform, discharge, or comply with any of the undersigned's liabilities, obligations, indebtedness or covenants to MAFC in this Note or in that certain Loan Agreement of even date between the undersigned and MAFC (the "Loan Agreement", and collectively with this Note, and the liabilities, obligations, indebtedness, and covenants described in (a) and (b), the "Liabilities");

(c)      The failure by Casino Data Systems ("CDS") to pay Fifty-Five Thousand Two Hundred Forty-Five and 85/100 Dollars ($55,245.85) to or for the benefit of the undersigned on September 13th of each calendar year during the term hereof;

(d)      The termination by the undersigned of any instruction given by her to CDS pursuant to the Loan Agreement, or the failure by CDS to recognize and/or respond fully and in accordance with any instruction or request delivered by the undersigned in accordance with the Loan Agreement, or by MAFC pursuant to any authority granted by the undersigned;

118217(1)-JSALON
UA-JA

000019

(e)    The occurrence or the continuing recognition by CDS of any instruction received by CDS to consider any party other than the undersigned's estate or MAFC as the party entitled to all payments from CDS subsequent to the death of the undersigned;

(f)    The occurrence of any event of default under any agreement between MAFC and the undersigned, or instrument or paper given MAFC by the undersigned, whether such agreement, instrument, or paper now exists or hereafter arises (notwithstanding that MAFC may not have exercised its rights upon default under any such other agreement, instrument, or paper);

(g)    (1) Any act by, against, or relating to the undersigned, or her property or assets, which act constitutes the application for, consent to, or sufferance of the appointment of a receiver, trustee, or other person, pursuant to court action or otherwise, over all or any part of the undersigned's property; (2) the granting of any trust, mortgage, or execution of an assignment for the benefit of the creditors of the undersigned, or the occurrence of any other voluntary or involuntary liquidation or extension of debt agreement for the undersigned; (3) the failure by the undersigned to generally pay the debts of the undersigned as they mature; (4) adjudication of bankruptcy or insolvency relative to the undersigned; (5) the entry of an order for relief or similar order with respect to the undersigned in any proceeding pursuant to the Bankruptcy Reform Act of 1978 (commonly referred to as the Bankruptcy Code) or any other federal bankruptcy law; (6) the filing of any complaint, application, or petition by or against the undersigned initiating any matter in which the undersigned is or may be granted any relief from the debts of the undersigned pursuant to the Bankruptcy Code or to any other insolvency statute or procedure; (7) the calling or sufferance of a meeting of creditors of the undersigned; (8) the meeting by the undersigned with a formal or informal creditors' committee; and/or (9) the offering by, or entering into by, the undersigned of any composition, extension or any other arrangement seeking relief or extension for the debts of the undersigned, or the initiation of any other judicial or non-judicial proceeding or agreement by, against, or including the undersigned, which seeks or intends to accomplish a reorganization or arrangement with creditors; or

(h)    The death of the undersigned.

No delay or omission by MAFC in exercising or enforcing any of MAFC's powers, rights, privileges, remedies, or discretions hereunder shall operate as a waiver thereof on that occasion nor on any other occasion. No waiver of any default hereunder shall operate as a waiver of any other default hereunder, nor as a continuing waiver.

The undersigned shall indemnify, defend, and hold MAFC harmless against any claim brought or threatened against MAFC by the undersigned or by any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of MAFC's relationship with the undersigned (each of which may be defended, compromised, settled, or pursued by MAFC with counsel of MAFC's selection, but at the expense of the undersigned).

The undersigned will pay on demand all attorneys' reasonable fees and out-of-pocket expenses incurred by MAFC in the administration of all Liabilities of the undersigned to MAFC, including, without limitation, costs and expenses associated with travel on behalf of MAFC. The undersigned will also pay on demand, all attorneys' reasonable fees, out-of-pocket expenses incurred by MAFC's attorneys and all costs incurred by MAFC which are directly or indirectly related to the preservation, protection, collection or enforcement of any of MAFC's rights against the undersigned and against any collateral given MAFC to secure this Note or any other Liabilities of the undersigned (whether or not suit is instituted by or against MAFC).

The undersigned waives presentment, demand, notice, and protest, and also waives any delay on the part of the holder hereof. The undersigned assents to any extension or other indulgence (including, without limitation, the release or substitution of collateral) permitted the undersigned or any endorser or guarantor by MAFC with respect to this Note and/or any collateral given to secure this Note or any extension or other indulgence, as described above, with respect to any other liability or any

collateral given to secure any other liability of the undersigned to MAFC.

This Note shall be binding upon the undersigned and upon her heirs, successors, assigns, and representatives, and shall inure to the benefit of MAFC and its successors, endorsees, and assigns.

The undersigned hereby makes the following waiver, knowingly, voluntarily, and intentionally, and understands that MAFC, in entering into any loan arrangements or making any financial accommodations to the undersigned, whether now or in the future, is relying on such waiver. THE UNDERSIGNED HEREBY IRREVOCABLY WAIVES ANY PRESENT OR FUTURE RIGHT OF THE UNDERSIGNED TO A JURY IN ANY TRIAL OF ANY CASE OR CONTROVERSY IN WHICH MAFC IS OR BECOMES A PARTY (WHETHER SUCH CASE OR CONTROVERSY IS INITIATED BY OR AGAINST MAFC OR IN WHICH MAFC IS JOINED AS A PARTY LITIGANT), WHICH CASE OR CONTROVERSY ARISES OUT OF OR IS IN RESPECT OF, ANY RELATIONSHIP BETWEEN THE UNDERSIGNED OR ANY OTHER PERSON AND MAFC.

The undersigned authorizes MAFC to complete this Note if delivered incomplete in any respect.

This Note is delivered to MAFC at one of its offices in Massachusetts, shall be governed by the laws of The Commonwealth of Massachusetts, and shall take effect as a sealed instrument. The undersigned submits to the jurisdiction of the courts of The Commonwealth of Massachusetts for all purposes with respect to this Note, any collateral given to secure his liabilities, obligations and indebtedness to MAFC, and his relationship with MAFC.

MAKER ("the undersigned"):

_Alicia Clark Bradley_
Alicia Clark Bradley

WITNESS to Signature (Signed in my presence in Boston, Massachusetts):

_Jonathan D. Salon_
(Name)

(Address)

_183 W. Canton Street_
_Boston, MA 02116_

COMMONWEALTH OF MASSACHUSETTS

County of Suffolk, SS.

February 16, 1999

Then personally appeared the above-named Alicia Clark Bradley, in Boston, Massachusetts, and made oath that the foregoing is her free act and deed, before me.

_Maurice Bourikas_
Notary
My Commission Expires: _____

(SEAL)

MY COMMISSION EXPIRES JUNE 16, 2000

116217(1)-JSALON
UA-UA

000021

# NUMBER 3

# FIRST AMENDMENT TO LOAN AGREEMENT DATED DECEMBER ___, 1999

This First Amendment to Loan Agreement (the "First Amendment") is entered into as of the ___ day of December, 1999, by and between Massachusetts Asset Financing Corp., a Massachusetts corporation (the "Lender") and Alicia Clark Bradley of Fairfield, California (the "Borrower")

## WITNESSETH

WHEREAS, on February 16, 1999 Lender loaned Borrower the principal amount of $130,000.00 pursuant to the terms of a Loan Agreement and a Promissory Note each dated February 16, 1999 (together the "Loan Documents");

WHEREAS, Borrower has requested that Lender advance an additional $15,629.64 pursuant to the terms of that certain First Amended and Restated Promissory Note dated the date hereof;

WHEREAS, Lender is willing to do so on the terms recited herein;

WHEREAS, to further effectuate the advance contemplated herein the parties have agreed that the Loan Agreement and this First Amendment thereto should be governed by the laws of the Commonwealth of Massachusetts.

WHEREAS, Section 11.6 of the Loan Agreement provides that it can be amended or modified by written amendment signed by the parties thereto, and the parties wish to hereby amend certain provisions of the Loan Agreement;

WHEREAS, terms not defined herein shall have the meaning assigned to then in the Loan Agreement.

NOW, THEREFORE, the parties hereto do evidence their understanding by execution herein below and agree to the following:

1. The Borrower has delivered to the Lender on this day the First Amended and Restated Promissory Note, and the Lender has agreed to advance an additional $15,629.64 to the Borrower;

2. The parties hereby agree that all references to the "Note" contained in the Loan Agreement shall mean that certain First Amended and Restated Promissory Note in the amount of $331,500.00 (which amount reflects principal, finance charges and agent fees) executed by the Borrower on the date hereof.

3. In all other respects, the parties reaffirm the provisions contained in the Loan Agreement, and each and every obligation, liability, covenant, representation, and warranty contained herein shall also be deemed to be part of the Loan Agreement as though fully set forth therein nunc pro tunc.

000048

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed, under seal, as of the day and year first written above.

Lender: Massachusetts Asset Financing Corp.

By: _____

Its: _____ Vice Pres.

Borrower:

_____
Alicia Clark Bradley

STATE OF CALIFORNIA

 SS.

December 7 ,1999

Then personally appeared the above-named Alicia Clark Bradley and made oath that the foregoing First Amendment to Loan Agreement is her free act and deed, before me,

(SEAL)

Notary Jesse Rubio

My Commission Expires: 8/14/2001

JESSE RUBIO
Commission # 1151253
Notary Public - California
Riverside County
My Comm. Expires Aug 14, 2001